The Judges delivered their opinions.
Judge Carr.
Mrs. Birdsong was a widow possessed of some slaves, which she held in right of dower, and some furniture, of which she was absolute owner. Being about, to be married to the defendant Jeffries, she executed an absolute deed of gift of her slaves and furniture, to her brother, J. W„ Land. This deed was drawn by the defendant Jeffries, *213 (a lawyer,) and executed with his assent, and in his presence. Tin* marriage took place on the same day; Land, the brother, was abseni when the deed way executed, and no delivery of the property to him, was made. It went, on the marriage, into the possession of the defendant Jeffries. In 1815, he executed a note to Land, the brother, purporting to be for the hire of the slaves. The deed was acknowledged by Mrs. Jeffries, before two magistrates in May, 1815, and on their certificate, admitted to record. The slaves remained with the husband about three years, when an execution of the defendant Stewart, on a judgment again st Jeffries, was levied on some of them; and the wife, by hand as her next friend, and also as trustee for her, filed a bill to restrain the sale, and have a decree for the property. The bill states, that the deed, though absolute on its face, was intended to be a deed of trust, conveying the property to Land for the separate use of his sister, and with the express purpose of securing it from the creditors of Jeffries, who was known to be very much involved. The creditor Stewart, and Jeffries the husband, are made defendants. Jeffries answers, acknowledging the statement in the bill, the purpose of the deed, his belief that his wife would not have married him, without having her property secured to her separate use; and that, the deed was drawn by him to effect that, purpose. Stewart answers, denying his knowledge of any secret trust; denying that the deed was ever properly recorded; stating that the husband had full possession; that the nolo executed for hire was a mere sham; and contending that under the circumstances, the property was subject to his execution.
The Chancellor dissolved the injunction, thereby'' disaffirming the claim of the plaintiffs, and subjecting the property to the payment of the husband’s debts.
The decision of this cause depends mainly upon the effect which we are to give to the deed executed by the widow just, before her marriage. Accordingly, the principal stress of the argument has turned on this deed, and it, has *214 been assailed in every shape which ingenuity could devise. Let us consider, in the first place, what kind of deed it is.
Upon its face, it is a simple deed of gift of slaves and furniture. If the evidence of parol declarations of the widow previous to the execution, and at the very moment of executing it, be admissible, I should feel very little doubt that her fixed purpose was, not to marry, without having her property secured in such a way, that it would remain for her use, protected from the creditors of the husband. That, previous declarations are admissible, we have several cases to shew. 2 Vern. 303; Walthal v. Johnson, 2 Call, 275; Jones v. Robertson, 2 Munf. 191. In this last case, the party had executed a deed of gift, and afterwards brought a bill to set it aside, on the ground that she sup» posed she was executing a will. The defendant, who was charged with the fraud, denied it by his answer; and the subscribing witnesses to the deed, agreed with his answer in their evidence; but neither of them swore that Mrs, Robertson read the deed, or heard it read. On the other side were the previous declarations of Mrs. Robertson, that she meant to get the defendant to alter her will; and it was also prove'd, that she appeared greatly astonished, when she afterwards discovered that she had executed a deed of gift. This Court did not hesitate to set the deed aside, on this evidence.
In the case before us, several witnesses prove, from a month before the marriage up to the moment of executing the deed, that the widow uniformly said she would never marry Jeffries, unless her property was secured to her, and from his creditors. It is proved that she knew he was involved. She had been talked to by her friends; and had received the advice of her former guardian, to have her property conveyed to her brother, and let him see the deed; and we have the evidence of another brother, who afterwards subscribed the deed as a witness, that on the morning of the marriage, she asked him to shew the deed to Wyche, her former guardian, (then in the house,) and *215 «’of him to examina it, and witness it; and what is still stronger, it is proved by a female witness, who stood ho-hind her chair when she executed She deed, that just as she was about to sign her name, she turned to Jeffries and asked if that was sufficient to secure? her property to her; and he answered, yes, her property could never be taken for his debts. I know very well that if is a general rule, as laid down by this Court in several eases, and among others in Ratcliffe v. Allison, 3 Band. 537, “that parol evidence is inadmissible to contradict, or substantially vary the legal import of a deed or written agreement;” hut I know also, that it is an exception to that rule, that '• fraud, mistake or surprise, in the execution of a contract, deed or other writing, may be shewn by parol evidence.” The evidence here proves clearly to my mind, that (if not fraud,) at least mistake and surprise, have intervened. It no where appears that Mrs. Birdsong ever read the deed, or heard it read; and if she had, I presume she would hardly have known the difference between a common deed and a deed of trust. Her determination was fixed, to have her property secured to her. How this was to be effected, she probably knew no more than a child. She tried to avail herself of the experience of her former guardian. But, here she was thwarted by the confidence of her bro ■ ther in Jeffries. He had said the deed was sufficient; and the brother did not think further enquiry necessary. What more could this helpless woman do ? That the object sho had in view would have been best effected by a deed of trust conveying the legal estate to her brother for her separate use, is most clear; but instead of that, she has executed a» absolute deed of gift, divesting herself wholly, both of the legal and equitable title. Did she mean to do this ? All the evidence, the whole aspect of the transac - tion, prove that she did not; that she thought she was doing the very- opposite, securing the property to herself. If-; not here then mistake, surprise ? And could there be a more legitimate, appropriate object, for the aid of equity ? *216 Suppose her brother, being clothed with the whole interes4:> had 4aken possession of the property, claimed it as his own, and refused to let her in to the receipt of the profita. Can it be doubted, that on a bill by her, equity would have corrected the deed, and set up the trust ? But her brother is the plaintiff, has declared the trust in his bill, and asked the aid of equity to execute it; and if there were nothing else in the cause, there would be no difficulty. But the property was never delivered to the grantee; remained with the widow till her marriage; then went into the possession of her husband, where it 'continued till a creditor of his levied an execution on some of the negroes. This brings up the question, is this property subject to be taken to satisfy the debts of the husband’s creditors ?
It is contended that it is so subject, because the deed to Land is void as to those creditors, 1st, as a deed fraudulent per se; 2d, under the statute of frauds.
1. Was the possession of the widow, from the execution of the deed to her marriage, such as to constitute fraud per se? ¡Before we pronounce upon this, it may not be .amiss to reflect a moment upon this doctrine of fraud per se. It is not statute law, and therefore not a strict positive thing. It is a rule of the Courts, founded in reason and convenience. It is not every possible case, in which possession remaining with the grantor constitutes fraud. The possession may be consistent with the deed. The purpose of a deed is to convey the title of the property to the grantee; and if the conveyance be immediate and absolute, possession ought to accompany it. If it remain with the grantor longer than in the natural course of fair transactions it ought, it creates a strong presumption of a secret trust; and unexplained, constitutes a fraud; but if may be explained. For instance; if I buy a slave, pay for him, and take an absolute bill of sale; he remains three or four months with the seller; this, without explanation, would amount, to fraud. But, suppose I prove that during the whole of that time, he was so ill that a removal would have endan *217 gered his life; this would remove the imputation of fraud. Suppose 1 buy a horse in the country, and tell the seller, I will send for him to-morrow. In the mean time an execution is levied on him; does any body doubt that I would recover him ?
In Lady Arundel v. Phipps, 10 Ves. 144, Lord Elbos says, “ The mere circumstance of possession of chattels, however familiar it is to say that it proves fraud, amounts to no more than that it is prima facie evidence of property in the man possessing, until a title not fraudulent is shewn, under which that possession has followed, Every case from Twyne’s Case downward, supports that.”
The case of Kidd v. Rawlinson, 2 Bos. & Pull. 58, and Watkins v. Burch, 4 Taunt. 823, speak the same langunge.
In Wilt v. Franklin, 1 Binn. 502, the deed was made on Saturday night, just after a judgment had been recovered against the grantor. It conveyed all the debtor’s property to a trustee for the benefit of his creditors. The trustee lived twenty-three miles off. On Monday, before the trustee had received notice of the deed, and while the property was yet in possession of the debtor, the execution of the judgment creditor was levied or it; and the question was, whether the deed was fraudulent. The Court decided that it was not Ch. JTinGintAN said, “The 13th of Elizabeth. (the provisions of which go no further than the common law, as now understood,} never had it in contemplation to invalidate a fair transaction.” lie adds, “I agree In general, the continuance. in possession of the grantor, Is one of the strongest marks of fraud, especially if such possession continues a long time, But possession is not always, in itself, conclusive ev idence of fraud, but is open to explanation.”
Let us now consider tho point of Mrs. Birdsong's possession. The first reflection which strikes us here, is the difference! of situation between Mrs. Birdsong and that class, ro which these doctrines of fraud are generally an- *218 plied. The debtor, who finds himself deeply involved, and expects soon to be stripped of his property, is under a strong temptation to make such a disposition of that pro as may sh>eM it from his creditors, and yet not deprive him wholly of its use. But, this would be dishonesty and to prevent it, is the object of the "Statutes of Frauds, and the doctrine of the Courts in furtherance of them. Every step of the debtor is watched with the utmost care, and looked upon with jealousy and suspicion. The end he has in view beinp; fraudulent, it is the object of the law, and the effort of the Courts, to defeat it, whatever may be the means resorted to. But, how does this reasoning apply tc Mrs Birdsong1 She had no creditors. The property was her own. No one had a right to object to any disposition of it. She had constantly declared openly, that the creditors of Jeffries should never have it; that she would put it out of their reach. This was an object which she had a perfect power and right to effect. Her intended husband had no objection to it. There could not exist, therefore, the least inducement to secrecy, collusion or fraud. The end being fair, it was natural that it should be attained by fair and open means. Accordingly, we see not a vestige of concealment in the execution of the deed. The wedding guests seem generally to have known it. These considerations furnish strong prima facie evidence against the idea, that in executing the deed Mrs. Birdsong intended to commit a fraud; and we are told by Mr. Justice Doddridge, in Sheppard’s Touchstone, 67, that “ when a conveyance is not fraudulent at the time of making it, it shall never be said to be fraudulent for any matter ex post facto.”
In Estwick v. Callaud, also, 5 Term Rep. 425, Ashhurst, J. says, “The question here is whether this were or were not a legal deed; and that depends on the intention of the parties, at the time when it was executed.”
If there vvas no imagination of fraud in the execution of the deed, it is difficult to conceive how the retaining possession from that time till her marriage, could be consider *219 dri fraudulent. She was married the same day, perhaps the next hour. In this brief space, it is impossible to beHeve that possession could conduce either to her own adVantage, or to the deception of others. No one indeed can ¿suppose, that in that anxious and interesting moment, her mind turned for an instant to the subject; and if it had, possession could not have been delivered, as her brother was absent. Her possession, then, after the deed, I consider as furnishing not. the slightest evidence of fraud.
But it is said, that immediately on the marriage, her Husband took possession of all the property, which remained with him three years; thus holding out to the world the idea that he had acquired it; by marriage, and tending to deceive creditors. Taking the ground that, this was intended to be a deed of trust, preserving the property to her separate use, this possession of the husband was not incompatible with the deed. In fact, it was the natural course of things. She having the slaves in possession, and living with her husband, they would of course seem to be in his possession. This was the case in Jarman v. Woolloton, and Haslington v. Gill, 3 Term Rep. 618; and in those eases the Court said the wife was the agent for the trustees. (hr again; If the wife made the deed honestly, how could, the possession of the husband aiFeel it with fraud ? On the marriage, her power and will ceased. She was no longer :mi juris. She could oppose no obstacle to the possession of her husband; and surely, it would be a most harsh construction which should sacrifice her rights to that possession. Suppose he had chosen to exercise acts of ownership of the most unequivocal character. Ought this to have bound her ? Could she have been considered as consenting ?
In Lady Arundel v. Phipps, 10 Ves. 139, there are several features resembling very much the case before us. By a marriage settlement, Lady Arundel had several estates settled to herself and husband for life, then in strict settlement, and for default of heirs, to be disposed of as she *220 (notwithstanding coverture,) should, by deed or writing, un(jer her hand and seal, &c. direct, &c. They had two daughters; no son. Lord Arundel becoming very much involved, and his creditors pressing him, Lady’ Arundel, by her trustees, made a contract with him, by which she purchased certain paintings, plate, jewels, china, glass, &e, about his mansion houses of Wardour, Lanherne and Irnham, for the sum of 12,000/. to be raised out of her estates, and applied towards the payment of his debts; the plate, jewels, &c. to be conveyed by Lord Arundel to her trustees, for her separate use. The deeds were executed. The plate, jewels, &c. remained in the different mansion houses; and a creditor of Lord Arundel levied an execution on some of them. An injunction was applied for to stop the sale, and granted. On a motion to dissolve, Lord Eldon considers the case very fully in various points of view. As to the possession remaining with the husband, he says, “ What is the nature of the property, and the sort of possession naturally to be looked for ? When Ladjr Arundel was making a settlement for the benefit of her daughters, afterwards, in all probability, to enjoy the possession of this ancient family seat, there was neither legal nor moral fraud in taking the property, for which she paid the value. But the nature of the property, the relation of the parties, the circumstances that she could have no object but to transmit it to her family, and that she must live with him who sold it; these circumstances, are very material as to the possession. It is said, that Lord Arundel dealt with creditors as if this was his property; and there might be a considerable question, whether his or the steward’s dealings in conversation or correspondence with creditors, as if this was part of the husband’s property, is to be admitted in a question between husband and wife.”
These remarks seem to me very sound, and very applicable to the case before us. I do not think, therefore, that the possession of the husband can be so referred to the deed, as to charge the wife with fraud in the execution of it. *221 if the husband had remained five years in possession, it would have raised the question under our statute of frauds, how far such possession would have given his creditors a title; but that question cannot arise here.
But it is said, that this deed has never been recorded according to law, and therefore is void as to the husband’s creditors. 1 think it unnecessary to decide whether this deed has been properly recorded; for, taking it as an unrecorded deed, 1 do not think it voiu as to the creditors of the husband.
Consider this, first, under our Act of conveyances. This deed comes neither within the first or second sections of that Act, as it is neither a conveyance of lands, nor a covenant or agreement made in consideration of marriage. The fourth section declares all bargains, sales, and other conveyances of lands, &c., all deeds of settlement upon marriage, &c., all deeds of trust and mortgages, &c., void as to all creditors and subsequent purchasers, &e., unless recorded according to the directions of the Act. It is only as a deed of trust, that the deed before us can come within this Act. It is certainly not a deed with a trust declared on the face of it; and it was contended in the argument, with great force, that to such only did the case apply. But, without deciding that point, we will take it as a deed of trust within the Act. For want of recording, it is declared void as to all creditors, &c. This cannot mean all creditors in rerum natura. If not all, it is natural to ask, what creditors does the Act mean ? I answer, creditors of the person from whom the estate moved, the grantor. As to those creditors meant by the law, the deed operates nothing. The estate attempted to be conveyed, remains in statu quo. It is declared void for the benefit of those creditors. Now, is it the creditors of grantor or grantee, who are benefited by the nullity of the deed? Surely the former; for, the deed being void, the estate remains in their debtor, and they may resort to it But, it cannot mean the creditors of both grantor and *222 grantee; for, they claim in different rights; one against the deed, the other under it. If the deed be void, the creditor of the grantor has free access to the subject; but if void, the creditor of the grantee can claim nothing, because his debtor could claim nothing.
In the case before us, it is said that the creditors of the husband do not claim under the deed of the wife, but against it. But, they must claim under the husband. He is their debtor. It is in the character of creditors that they claim; and if not under their debtor, then I ask under whom they claim. It is compared to the case of a man’s making a fraudulent deed of his property, which, though binding on him, is void as to his creditors, and they may take the property, though he could not. But, the comparison does not hold; for there, the grantor had property in him. He attempted to part with it, and did, so far as he was. concerned; but the deed being void as to creditors, the property, as to them, still remained in their debtor. But, here the debtor never, for an instant of time, had a scintilla juris in the property. The deed intercepted his marital rights, and having his assent, binds him and all claiming by, through, or under him. If the creditors do not thus claim, they are not bound by the deed. But I should like to know, how else they can claim. Did the husband commit any fraud upon his creditors, by assenting to the deed ?• Certainly not. They might wish indeed, that he could so drive his matrimonial bargain, as to enlarge the fund accessible to them; but they could not say to him, eiyou shall do nothing which may intercept your marital rights, and thus keep from us the property of your intended bride.” If the husband was guilty of no fraud towards them, still Jess can it be imagined that the wife, in securing her property from them, committed a fraud.
The question, what creditors are meant by the law, and whether it comprehends the creditors of the husband, is so clearly and fully treated in the case of Pierce v. Turner, *223 5 Cranch, 154, that I cannot do better than refer to it, in support of my opinion, Taking the deed before us as a deed of trust, the two cases are exactly similar in principie; for. though the husband signed the deed there, he assented to It here, which was just as effectual to bind. There the feme, just before marriage, executed a deed of trust, conveying her property to a trustee, for the use of herself and husband during life, and to her heirs. The husband signed merely as evidence of his assent. The deed was never recorded. On the marriage, - the property, (slaves and land,) went into his possession, and remained with him till his death; less than five years. The widow took possession of the property, and the husband’s creditors sued her, contending that the slaves were subject to their debts, because the deed not having been recorded, was, as to them, void, under our Act regulating conveyances. This brought, up .the very question, whether the words in that Act, “all creditors,” included creditors of the husband. The Court consider, first, the genes’al question, whether in deeds within the Act, all creditors mean creditors of both grantor and grantee. They say (in effect, for I am not quoting their words,) that it can never be the interest of the creditor of a grantee, to insist that the deed to the grantee is void; except in one caso, to wit, where a better title can be set up for the grantee, paramount the title of the grantor, for, in every other case, the creditor must derive his title under the deed of the grantor; and, if it be void as to the grantee, the creditor can found no claim upon it, in right of the grantee, “ It would be strange,” they say, “ that a deed should he binding as to the grantee and his heirs, and yet void as to persons claiming under him, for avala able consideration. Indeed, it would seem repugnant and absurd, to apply the same expressions (all creditors) to persons who, if they claim at all, must claim under the deed, and also to those who claim against the deed. In the latter case, the invalidity of the deed In consistent with the *224 claim; in the former, it is destructive'of it.” The Court then proceed to speak of the particular case, and observe, that it may be said that the general reasoning does not appty to it, because the creditors of the husband do not claim under, but against the deed, and thus stand on the same ground with the creditors of the grantor. But, (they ask) by what rule of construction can the invalidity of the deed be applied in this particular case, to creditors claiming, not under the grantor, but another party to the deed; when in every other case which can be stated, that invalidity is applicable to the creditors of the grantor or those claiming under him, and to none other? The Court then put several eases, shewing the absurd consequences which would follow from taking the words all creditors to include creditors of the husband; and observe, that these difficulties are all avoided, by restraining them to their proper meaning.
“ If they are construed to mean creditors of the grantor and those claiming under him, then the deed being good between all the parties to it, no estate vested in Turner, but such as the deed itself vested in him. The title of his creditors being clearly derivative, if he had no title under the deed, then his creditors could have none. But, if he had a title incompatible with that granted by the deed, then he was not bound by the deed; contrary to the statute which declares that he was bound. If his creditors have any title, it cannot be derived from him, when in point of law, he had none in himself; and independent of his title, it is impossible to shew any in them.” The Court, (after some further remarks,) conclude thus: “To say in this case, that upon the marriage of Turner, or at any time afterwards, the law cast upon him an estate in the property conveyed by this deed, (of which he had notice, and to which he was a party,) inconsistent with the estate conveyed to him by that deed, (and this must be said, if the creditors-can claim «such estate in his right,) is, in the opinion of the majority of the Court, repugnant to the plain meaning and spirit of the law.”
*225 To apply this last sentence (as the whole opinion is strictly applicable) to our case, “To say that on the marriage of Jeffries, or at any time after, the law east upon him an estate in the property conveyed by Mrs. Bird■song’s deed, (of which he had notice, and to which he assented,) inconsistent with the estate conveyed by that deed, (and this must be said, if the creditors can claim such estate in his right,) is, in my opinion, repugnant to the plain meaning and spirit of the law.55
It was objected, that the case of Andarson v. Anderson, decided by this Court, 2 Call, 198, is in conflict with the construction I give to the words “ all creditors.55 That it is not, the Court has clearly shewn, in that same case of Pierce v. Turner. The two cases are materially different in their circumstances. In Jinderson v. Jinderson, there was nothing to intercept the marital rights; here there was a deed binding on the husband, and effectually intercepting and preventing the existence of such rights. In that case, too, at the time when the slaves were taken, it was perfectly contingent whether the wife could ever claim any interest in them, in opposition to persons deriving title under the husband. For, if the husband should have survived the wife, or lliey should have had issue, the absolute legal estate which the husband gained by the marriage, would have remained unaffected by the deed, according te its plain words.
It remains to enquire, how.the deed before us is affected by our Statute of Frauds; and to give the objection its full weight, we must here take the instrument to he an absolute deed of gift unrecorded. The second section of the law declares every gift, grant, &e. made, &e. of malice, fraud, covin, collusion, &c. to delay, hinder or defraud creditors of their just and lawful actions, suits, debts, &e shall be deemed and taken (only as against the persons, their heirs, &c. whose debts, &c. by such guileful and co vinous devices and practices, shall or might be in any wise disturbed, hindered, delayed or defrauded,) to be clearly *226 and utterly void, &c. I ask what creditors are the Legislature here protecting? And from what are they protect» ing them ? Are they doing so vain a thing, as shielding the creditors of ¿1. from the fraudulent grams, gifts, &c„ of B. C. D. &e. ? Why, what is it to the creditors of dl* that B. C. D. &e. are giving or granting their property ? How can it interfere with their rights ? How can it delay, hinder or defraud them? No; the law was not attempting this vain and useless thing. It meant simply to guard creditors from the fraudulent attempts of their debtors, to delay or hinder the recovery of their debts, by disposing of that property which those creditors would have a right to seize, so soon as they obtained judgments. The very term creditor implies all this. There can be no creditor but where there is a debtor, and he is only the creditor of the man who owes him money.
It is.the latter part of this section, on which it is contended that the deed here is void; but, this first part has a decisive influence on that. The words are, “and moreover, if a conveyance he of goods and chattels, and be not on consideration deemed valuable iu law, it shall be taken to be fraudulent within this Act, unless the same be by will duly proved and recorded, or by deed in writing, acknowledged or proved,” &c. Fraudulent toithin this did; what does this mean ? Was it the Legislative intention to make the deed an absolute nullity, of which every stranger might take advantage ? If so, the deed could not be fraudulent within this Act, (by which is meant, in the man» ner declared by this diet;) for, the Act had declared those deeds, spoken of in the former part of the section, fraudulent only as to those persons, whose debts were or might be hindered or delayed by them. The deeds in this part of the section, then, both by the words and the reason of the law, must also be fraudulent only as to those who have rights in, or claims upon, the property which may be affected by the deeds: and what shadow of right or claim had the creditors of Jeffries on this property of the widow *227 when she conveyed it to her brother ? Nono apon earth. It was fairly and honestly made, for the very purpose of preventing those creditors from over having any thing to do with that property; a purpose not only legal, but I may say laudable.
It is said, that if this deed had not been made, tho creditors of the husband would have had a right to the property. 1 say no; for, from the. evidence, if tho deed had never been made, the marriage would never have take», place But, the deed was made, fairly made. It defrauded nobody. The creditors of Jeffries were not the creditors of the grantor, and never had any interest in the property. As to them, therefore, it was of no importance whether the deed was recorded or not; and it is equally true, sunder the Statute of Frauds, as under that, of conveyances, that the creditors of the husband are not within the law.
Judge Green.
• The decision of this case will depend, in a great degree, upon the construction which may be put upon the words creditors” and 11 purchasers f as used in our Statute of Frauds and Perjuries. On the part of tho appellants, it. is contended, that, the statute extends only to the protection of creditors of, and purchasers from, the grantor, whose deed is impeached; whilst, on the other hand, it is insisted that it extends to all creditors and purchasers, no matter of and from whom, whose interests are affected by. the conveyance. The literal terms of the statute, adopted from those of the 13th and 27th of Elizabeth, favor the latter proposition. It avoids all conveyances made with intent to defraud creditors and purchasers, (without specifying of or from whom,) as against the person or persons, (without exception or limitation,) and every of them, whose debts, suits, demands, estates, thereby shall or might be in any wise disturbed, hindered, delayed or defrauded. It was impossible to adopt more general terms to embrace all ere *228 ditors and purchasers, who, hut for the conveyance, would have been entitled to subject the property conveyed, to the payment of their debts; or would have had a good title to the property purchased. And these terms have always received a beneficial and liberal construction in the English Courts, in favor of all creditors and purchasers, and in suppression of fraud. Twyne’s Case, 3 Co. Rep. 826. In Bunwell's Case, 6 Co. Rep. 72, the grandfather made a long lease to the father, who, in the life-time of the grandfather, assigned it to the son. The grandfather died, having retained the possession of the land. The reversion descended on the father1, who had previously sold the lease to another; and the lease made by the grandfather, and the assignment by the father, were both held to be fraudulent and void, as to the purchaser from the son, under the 27th of Elizabeth; and the Court held, that “ the words of the 27th of Elizabeth are general, and there is no need that he that sells the land, should be the maker of the fraudulent estate or incumbrance; but, if the estate be fraudulent, the purchaser shall avoid it, be loho will the sellerV
In the Magdalen College Case, 11 Co. Rep. 74, it was stated by the Chief Justice, that a purchaser from a tenant in tail, by a common recovery (which would bar the reversion, if in a common person, but not if in the King,) might, under the Statute of 27th Elizabeth, avoid a conveyance made by the reversioner to the King, with intent to prevent the purchaser from having the benefit of the recovery.
In Clarke v. Rutland, Lane, 113, cited in 13 Vin. Abr. 528, pl. 15, it is said, if the father make a lease for forty years to a stranger, and continues in possession, and dies, the land descending to his heir who sells it, the lease is void against the purchaser.
In these cases, the conveyances were held to be void against those purchasing, not from the grantor, but from others, whose conveyances would have given a good title,, if the fraudulent conveyances had not been made; and in *229 EurwelPs Case, and in that in Lances Reports, the leases of tiie father would have been void against the creditors of the heir; for, the words of the tilth, are as general as those of the 27th of Elizabeth.
In Kynaston v. Clarke, 2 Atk. 204, the father, upon his marriage, settled his estate upon himself for life, remainder to the issue of the marriage in tail; the reversion remaining in him. He had an only child, a son, and died intestate. The son took an estate tail, and the reversion in fee descended on him. He died without issue, and devised the estate to the defendant; and the question was between a specialty creditor of the father, and the devisee of the son. Lord Hakdwicke held, that the devise was void under the statute of fraudulent devises, of 3d and 4th Wm. Mary, and the creditor entitled. The son was never a debtor in any sense of the word. No suit could, at any time, have been brought against him. An estate tail is not assets; nor is a reversion after an estate tail assets, until it falls into possession, and this never fell into the son’s possession in his life-time. 2 Saund. 7, note. The preamble of the statute of fraudulent devises, speaks only of the creditors of the devisor, and makes void the devise as to such creditors. This decision was founded upon an equitable construction of the statute; because, if the devise had not been made, the creditor would have been entitled to satisfaction of his debt out of the reversion; which, in that case, would have descended to the heir at law of the father. Our Statute of Frauds is, in its terms, large enough to embrace all such eases, without any equitable construction.
In the case of Haslington v. Gill, reported in a note to Jerman v. Woollalon, 3 Term Rep. 620, the husband and wife, before marriage, joined in a conveyance to a trustee, of a stock of cows, to hold to the separate use of the wife; and the husband covenanted to permit the wife to enjoy the property to her separate use, and to carry on the. trade of a cow keeper and milk seller, for her separate *230 benefit The cows belonged to the wife. After the marriage, she enjoyed the use of the cows, according to the terms of the deed; and a creditor of the husband took them in execution; and the trustees sued the sheriff, and recovered. The Court put the case upon the ground that the deed was made for valuable consideration, and that the possession was consistent with the terms of the conveyance. But all admitted, that if the husband had enjoyed the use of the property, so that the possession would have been inconsistent with the terms of the deed, the conveyance would have been void as to the husband’s creditors. Lord Mansfield said, “If the settlement had been made after marriage, or the husband had carried on the trade in his own name, and contracted debts in it, that would have Varied the case.” Willes was of the same opinion. Ashhurst said, “The possession alone of the wife does not make this transaction fraudulent; for, it was consistent with the deed of settlement.” And Buller said, “It has been frequently determined, that possession alone is not evidence of fraud. The transaction must be shewn to be fraudulent from other circumstances. If the possession be inconsistent with the conveyance, that is evidence of fraud. But here the possession is consistent with the deed.”
The terms of the statute and these cases, I think, completely justify the construction contended for by the counsel for the appellees. No case has occurred in this Court, which can be supposed to have involved this question, except that of Prior v. Kinney, 6 Munf. 510, in which a creditor of the husband sought to impeach a conveyance made by the wife, on the eve of marriage. Neither the arguments of the counsel, nor the reasoning of the Court, are given in the report of the case, and it is probable that the reporter was not present, and had no reference to any sources of information, but the record. The facts of the case are imperfectly reported, and the decision of the Court was made without much time for consideration; the case *231 being argued on the 16th, and decided on the 18th of February. Upon examining the record, I find that the cause was heard on the bill, answers and replication, without any evidence whatever. The answers were, in all material, particulars, responsiva to the interrogatories of the bill, and were therefore evidence, and the only evidence, in the cause. It appeared that two days before the marriage of Peggy Lewis Xa Allen Prior, she, (in consequence of a previous agreement with her sister Elis. Lewis, that, which” ¿never of them died or married first, the other should have nil her property,) conveyed all her property to the said Elizabeth. The consideration above mentioned was not expressed in the deed; but the bill called for a discovery of the real consideration. This deed was recorded on the proof of one witness, and of the hand-writing of another, who was dead. The answer of Elizabeth Lewis slates, that “this defendant, after the said intermarriage of her «ísder Peggy with Allen Prior, lived with her sister and the said Prior, anti since that time has continued to live partly with the said Prior, and occasionally with her brother-in-law Andrew Lewis; that she hath allowed her brother-in-law Allen Prior, to have the use of the negroes except two, Maria and CharlotteA The answer of Allen Prior states, that the conveyance was made with bis privity: that the slaves, except Maria and Charlotte, have generally been in the use and employment of this defendant, loaned by the said Elizabeth Lewis, for the use and convenience of her sister Mrs. Prior; the said Elizabeth occasionally residing with this defendant, and exercising acts of ownership over the said slaves: that the slaves taken in execution (being those conveyed by the deed* and taken September 10, 1808,) had then never been in-Ms possession, hut were in the possession and employ* raeul of Col. Andrew Loewis, the brother of Elisabeth,, and who then resided with the said Andreis. The marriage was on the S5th of May, 1803, and Ihu subpuena at the suit of (Wtr'.t creditor issued on the 1st of April. 1800, *232 The deed in question was made upon a valid and valuable consideration. But, if the Court had considered that possession had continued without interruption in Peggy Lewis before her marriage, and of Prior after, by virtue of the loan admitted in both answers, they must have decided in favor of the creditor, under the provision of the Statute of Frauds in relation to loans, even if upon the other provisions of the statute, a creditor of the husband could not, under other circumstances, in any case impeach a conveyance made by the wife before marriage, with the assent of her husband. The Court, therefore, must have considered that the possession of the property accompanied the deed, and remained with the grantee (residing at Jlndrew Lewis’s) from the time of the execution of the deed on the 23d of May, 1803, until taken in execution in September, 1803; and that after it came to the hands of Prior, the donee resided usually with him, and exercised acts of ownership over it, and had such a possession of it, as not only to take the case out of the clause of the statute in relation to loans, but upon the whole case, to negative the charge that there had been any possession inconsistent with the terms of the deed; so as to leave no ground for the imputation of fraud. There was, therefore, no occasion to decide the question under consideration; and if the Court had considered and decided it, they would surely have given their reasons for their judgment upon a question so important and entirely new with us.
' Our statute avoiding unrecorded deeds as to “all creditors and subsequent purchasers,” presents the same question as the Statute of Frauds and Perjuries, as to what description of creditors and purchasers were intended to be protected. The only difference in the description of creditors and purchasers in these statutes, is, that the latter, in terms, limits its operation to such only as may be injured by the fraudulent conveyance in any way; the former embraces “all creditors and purchasers,” without any limitation in the terms of the law. But the operation of the law is *233 necessarily limited by the nature of the subject, to such as may in any way be injured by the existence of the unrccorded deed.
The case of Pierce v. Turner, 5 Cranch’s Rep. 154, was strongly relied upon by the counsel of the appellees, as establishing a contrary doctrine, as to the invalidity of unrecorded deeds. The decision in that case limits the application of the words “all creditors and subsequent purchasers” in the statute regulating conveyances, to creditors of, and purchasers from, the grantor only, in all possible cases.
The consequences of this doctrine are so important, as to justify and call for a critical and careful examination of every argument urged in support of it.
The Court, after stating the case, say, “ The deed not having been recorded within the time prescribed by law, it is contended by the plaintifl in error, that the same became void, as to the creditors of C. Turner” (the husband) “ whose rights remained unimpaired by that deed, in the same manner as if it had never boon madcj in which case, It is not denied that an absolute estate” (in the personal property) “ would have vested in the husband, on his marriage. This argument proceeds upon the grounds, that by the words all creditors and subsequent purchasers, is meant as well the creditors of the grantee and subsequent purchasers under him, as those who might derive title under the grantor” (that is, creditors of, and purchasers from, the grantor,) “although the words are certainly broad enough to comprehend the whole, it is believed by a majority of the Court, that the construction should be such as to limit the application of them, to the creditors of, and subsequent purchasers from, the grantor. In no case but one, where a title can be set up for the grantee paramount the deed, can it ever be the interest of a creditor of the grantee to insist upon such a construction as is insisted upon in this (case) for as he” (the creditor of the grantee) “must (in all other cases) derive his title under *234 the deed, if it be void as to him,” (the creditor of the grantee) “it is impossible for him to found a claim upon it in right of the grantee, whose only title is under the deed. It would be strange, that a deed should be binding upon the grantee and his heirs, and yet be void as to a person claiming under him for valuable consideration;’'1 (creditors of, or purchasers from, the grantee;) “and yet such would be the consequence, if the words all creditors and subsequent purchasers, should be understood to apply to persons claiming under the grantee,” (his creditors and purchasers from him) “as well as to those claiming under the grantor. Indeed, it would seem repugnant and absurd, to apply the same expressions to persons, who, if they claim at all, must claim under the deed; and also to those who claim against the deed. In the latter case, the invalidity of the deed is consistent with the claim; in the former, it is destructive of it.”
The Court here assume, that the p’aintiff’s claim asserted as a general proposition, that by force of the statute, an unrecorded deed was void as to the creditors of, and pur= ehasers from, the grantee, in all eases; which, if not true as to all cases, was not true as to any; and then shew that this proposition is absurd in cases where the grantee had no title prior to the deed, and would not have had any title if the deed had not been made, or is void; and therefore not true, even in cases in which the grantee had a prior title, or but for the making of the deed, would have ac« quired a title by operation of law. This, I think, is the substance of the argument, although I confess that I have had some difficulty in comprehending it.
The argument on the part of the plaintiff did not assert the proposition imputed to it; nor was that proposition neeessary to support it. It asserted only, that an unrecorded deed was void as to the creditors of, and purchasers from, any person upon whom an interest would have devolved, if the deed had not been made, and out of which the creditors would have been, in that case, entitled to claim satisfaction *235 t>f their debts, whether the debtor was a grantee under the deed or not; they claiming under him, not as granice, but as one upon whom a better title would have devolved by law, if the deed had no existence in fact or in point of law. In such a claim there is no more inconsistency, than in the ordinary case of a claim by the creditors of, or a purchaser from, a grantor, who claim under him, although he and his heirs are hound by the deed, and have no estate in themselves. In the ease which the Court had under consideration, the husband was a graniee of a life estate in his wife’s land. Tí her whole property had been settled to her separate use, he would not, have been a grantee but a grantor, to the extent of his marital rights; and not one word of this argument would have been applicable to the ease. And can, it bo seriously contended, that the Legislature intended, that if the husband took nothing by the deed, and so was not a grantee, it should be void as to his creditors or purchasers from him; and good, if he took some trifling interest under the deed, which would not have devolved u- on him, by virtue of his marital rights, and so was a grantee ? Suppose a father were to convey his estate, by an unrecorded deed, to a stranger, and retain the possession until his death; and his heir at law then to enter upon and enjoy the estate, and sell to a purchaser without notice; would not such a purchaser or judgment creditor of the heir bo entitled against the grantee of the hither ? I think it clear that they would. In such case the heir would not be a grantee. So, if the father were to convey by an unrecorded deed to an only child, an estate for life or years, with remainder to another in fee, and to retain the possession during his life, and upon tho death of the father, the son entered and held and enjoyed the estate, and sold it to a purchaser without notice, or a creditor by judgment against the son extended the land; would the circumstance that tho son was a grantee of a particular estate, vary tho rights of the purchaser and creditor, from what they would be in the former case ? I can see no difference in tho casos. *236 In both, the parties claiming under the heir would claim under him as heir, and not as grantee, enjoying an estate which would have devolved on him by operation of law, if the deed had not been made. The case of a husband, in respect to the personal property of his wife coming to his possession, is the same as that of an heir, in respect to real property.
The expressions in this paragraph, “ must derive his title under the deed,” “ to persons claiming under the grantee,” and “ if they claim at all, must claim under the deed,” although applicable to creditors of, and purchasers from, a grantee, who, if the deed had not existed, would have no title whatever, have no application to the creditors of, or purchasers from, one (an heir, for instance, or a husband,) who, but for the deed, would have a title, although a grantee, or if a grantee, would have had a better title by law than by the deed; unless the proposition which involves the question under consideration is assumed as true, to wit, that wherever the heir or husband is a grantee, their creditors or purchasers from them must claim under the deed, and cannot claim against it, Even if that were admitted, as it is not, it would not follow that it would be applicable to a case, in which the heir or husband claimed nothing under the deed, and was not a grantee.
The Court pi’oceeds, “It may be said, however, that these observations are inapplicable to this particular case, because the creditors of the husband do not claim under but against the deed, and in this respect, stand upon the same ground as the creditors of the grantor. But in every other case that can be stated, the invalidity of the deed is applicable to the grantor or those claiming under him,” (creditors of, or subsequent purchasers from, him,) “and to no others. By what rule of construction, can the same words have a more extended meaning,” (than the creditors of, and purchasers from, the grantor,) “so as to be applied to persons who claim in right of a parly to the same deed, other than the grantor ?”
*237 The argument in this sentence is, that the ease then undor consideration, in which the husband was a grantee, was the only ease that could be stated, in which the deed could be held to be invalid as to any creditors or purchasers, except those of and from the grantor; and therefore the terms creditors and purchasers, ought not to be extended to that particular and single case. It seems to me, that both the premises and the conclusion of this proposition are incorrect. Besides the cases of the invalidity of deeds, as to the creditors of, and purchasers from, the grantor, and the particular case of the creditors of, and purchasers from, a husband, who is a grantee in the deed, there are the cases of the creditors of, and purchasers from, an heir, to whom a particular estate is conveyed by the ancestor, with remainder to another; and of the heir, when the estate is conveyed by the ancestor, and nothing is conveyed to him; and of a conveyance by the wife to a trustee for her separate use, or absolutely to a stranger, the husband taking nothing under the deed, to which this invalidity is applicable, as before mentioned. In these two last eases, the words of the statute would not be applied ei to persons who claim in right of a party to the same deed, other than the grantor.”
All these cases of the creditors of, and the purchasers from, the grantor, heir and husband, when the grantee is a stranger, or when the heir or husband are grantees of particular interests less than they would have taken by operation of law, fall within one general rule: that the deed is void as to all creditors and purchasers, who, but for its existence, would have a right to subject the property to their debts, or would have had a good title by their purchases. This is the literal effect of the terms 11 all creditors and subsequent purchasers»” The word all is used, not as contradistinguishing creditors from subsequent purchasers; but applies to all subsequent purchasers, as well as to all creditors. If the intention of the Legislature had been to confine these words to creditors of, and purchasers from. *238 the grantor, the language would have been, “creditors of, and subsequent purchasers from, the grantor.” If in truth, as the Court supposed, no possible cases could exist, besides that of the creditors of a grantor, or purchasers from him, in which the existence of the deed could prejudice the creditors of, or purchasers from, any other person, except only in the single case of a husband and wife, in which the husband was a grantee, it would afford no shadow of reason for excluding the latter case from the operation of the. statute, for that cause only; especially if it came both within the words and reason of the law. I have noted in parenthesis my understanding of the meaning of the Court in the expressions which they used. If they meant by “those claiming under him,*’ the creditors of those claiming under the grantor by operation of law, it would embrace the creditors of heir and husband, who claim under the ancestor and wife, alike by operation of law, and would put an end to the argument.
The Court proceeds, “If the deed in question had granted to Charles Turner (the husband) an estate in fee as to the land, and for life in respect to the slaves, would it have been void as to simple contract creditors, who could only go against the personal estate, and good as to specialty creditors, who might subject the real assets ? And yet, if the deed be void at all as to the creditors of the husband, it must be so throughout; in which case it might well be doubted, whether the land could be made liable to the payment of the husband’s debts. Or, to present the question in a less doubtful shape, would the deed be void as to a purchaser from the husband of the slaves, and good as to a purchaser of the land ?”
The Court here state, that if the deed be void at all, it must be void throughout; by which they mean, that it must be void as to all the creditors of the husband, simple contract as well as specialty creditors, if void as to any of his creditors. They did not mean to say, that a deed cannot be void as to a part of the subject conveyed, and good *239 as to another part. Their expressions do not import that; and it is clear, that a deed may be good as to a part of the subject conveyed, and void as to a part. As, if a man were to make a voluntary conveyance of two estates lo one person, and the grantee afterwards sold one to a purchaser for value, and the grantor sold the other, the original deed would be good as to the property and the purchaser of it, sold by the grantee, and void as to the property and the purchaser of it, sold by the grantor. Or, if two estates were conveyed to one person by an unrecorded «leed, and the grantor sold one to a purchaser without, and the other to a purchaser with, notice of the unrecorded deed, the unrecorded deed would be good as to the estate purchased with notice, and void as to that purchased without notice. The Court were certainly right in saying, that if the deed be void as to a part of the creditors of the husband, it must be void as to all of his creditors; and ¿hoy have stated a case, in which they seem to take it for granted that the deed would be void as to the simple contract creditors, and good as to the specialty creditors, if the statute was applied to the creditors of the husband; the ease of a claim by the creditors after the husband’s death, in which case the simple contract creditors could, if the deed were void, pursue the personal property, but not the real; whilst the specialty creditors could pursue the real, upon the ground that the deed was good as to that subject. The deed would be good as to the land, against and in favor of all creditors of the husband; because as to that subject, it could not injure them, and if avoided, the title would remain in the wife, unaffected by the marital rights of the husband, and as to the land, both specialty and simple contract creditors would have au equal right to subject the land in the husband’s life time, by obtaining judgments and extending it, which is the only way in which it could be reached. As to the personal property, the deed would be void, because it injured the creditors of the husband; and that as to all creditors, both simple *240 contract and specialty, both of whom could subject it, either in the life-time of the husband, or after his death. The simple contract creditors, after the husband’s death, could not reach the land, not because the deed had not the same effect as to both classes of creditors; but because, upon general principles of law, a simple contract creditor cannot subject the real assets, even where there is no question as to the title. As to the real property, therefore, the deed would be good throughout, that is, as to all creditors of the husband; and as to the personal property, it would be void throughout as to ajl the husband’s creditors; and the dilemma supposed by the Court could not exist, to wit, that a case might occur in which it might be necessary to hold, if the statute embraced the husband’s creditors, that it was void as to some creditors, and good as to others. The Court say, that it may be doubted in that case, whether the land could be made liable for the husband’s debts, without suggesting the grounds of the doubt. I cannot conceive any other ground, than that of the hardship to the wife; but, this would go to repeal the statute in toto¡ for, no grantee loses the property by failing to record his deed, without the same hardship. This burthen is thrown upon the wife, to save creditors and purchasers from injury, which they would have no other means of avoiding; whereas the wife might prevent-any injury to any person, by having the deed recorded as the law requires. The Court present the question without answering it; as if there was no doubt as to the answer, whether in such case, the deed would be good as to a purchaser of the land from the husband, and void as to the purchaser of the slaves. I think it would; and that it would be no more than the common case of a deed void as to one subject conveyed, and good as to another; or void as to the purchaser of a part, and good as to the purchaser of another part. The Court proceeds, “Let the true interpretation of the words all creditors and subsequent purchasers, be once ascertained, and every difficulty in the case is at an end.” *241 All the difficulties alluded to by the Court, arose from the assumption of the proposition as true, that a creditor can claim nothing which his debtor could not claim; which was the very question to be decided. They proceed, “ If they are construed to mean the creditors of the grantor or subsequent purchasers from him, then the deed being good between the parties to it, no estate vested in C. Turner, but such as the deed itself passed to him; the title of his creditors being clearly derivative. If he had no title under the deed, (and being himself bound by it, he could have none which was inconsistent with it,) then his creditors can have none. But, if he had a title incompatible with that granted by the deed, then he was not bound by the deed, contrary to the statute which declares that ho was bound. If his creditors have any such title, it cannot be derived from him, when in point of law, he had none in himself; and independent of his title, it is impossible to shew any in them;” that “ a subsequent purchaser, with notice of a prior unrecorded deed, is bound by it; and the husband, being a subsequent purchaser, had not only notice, but was a party to the prior unrecorded deed; and if the creditors claim an estate in his right, (by virtue of his marital rights,) they claim against his notice of the prior deed, to which he was a party; which would be repugnant to the plain meaning and spirit of the law.” The Court did not, for a moment, advert to the policy on which the Jaw was founded; which is the best if not the only criterion for determining its spirit.
The doctrine that a deed may be good as to the party, and binding upon him and Ms heirs, and void as to others, is perfectly familiar, both under the statutes, and at common law; and by force of our statute of frauds and perjuries, creditors may have satisfaction out of property, to which their debtor never had any sort of title; as in the case of a loan by an unrecorded deed, or by parol, for more than five years. It is competent to the Legislature to enable a creditor to claim satisfaction out of property, to which *242 his debtor has no title, and could assert no sort of claim, The only question is, whether they have intended to do this, in the particular case; and if they have, it is no ground for refusing to execute the law, to say, that the creditor can only claim under the debtor’; and that, therefoi e, the creditor can claim nothing, which the debtor could not. This argument is as completely applicable to onr statute respecting loans, as to the case of husband and wife, and more so; for, if the loan were not made, there would be no title by which the property would belong to the loanee. But, in the case of husband and wife, if the deed were not made, her personal property would devolve on him by law; and in favor of creditors of, and purchasers from, the husband, that title is, in contemplation of law, vested in him, unless notice of the deed which intercepts it, is given by recording it as the law directs. In like manner, the possession of the loanee, though it gives no title to him, yet in contemplation of law, gives him title so far as his creditors are concerned. The argument of the Supreme Court proves too much. It would apply to the ordinary case of the creditors of the grantor. He is a party to the deed, is bound by it, and can set up no title inconsistent with it; and his creditors claim under him, in the same sense as the creditors of the husband claim under him.
The Court declared that they felt some difficulty in consequence of the decision in Anderson v. Anderson, 2 Call, 198; but contented themselves with saying, that with regard to the point under consideration, that decision was believed to be right, and proceed to shew upon what grounds. The Court of Appeals proceeded solely upon the ground, that it was an agreement in consideration of marriage, void for want of recording. I am nat satisfied with the reasoning of the Supreme Court, to prove the decision of the Court of Appeals right, independent of the statute; and think that the wife would have succeeded, if the statute had not been in her way. The case was this; The intended husband executed an instrument of writing, *243 agreeing to settle her property, (which consisted of slaves,) upon the intended wife. This paper, although recorded, was not recorded within the time prescribed by law; and was held to be no impediment to the creditors of the husband. The wife filed her bill against her husband and his creditors, for the purpose of protecting the property against the claims of the latter. It was argued on the part of the plaintiffs, that it was clear that if the husband only was concerned, relief would be given against him, and that his creditors could only have the same rights that he had: that the failure to record the instrument was a fraud in the husband: that there was a distinction between the property of the wife and the husband/ and that the husband was a trustee for the wife. 'Hie counsel for the defendants relied upon the force of the Act of Assembly as avoiding the instrument. The Court propounded and decided that as the only question on the merits of the case. If there had been no law requiring marriage settlements to be recorded, or if a settlement of the wife’s property upon her, or rather his agreement to settle it, was valid against the husband’s creditors without recording, then clearly the husband was a trustee for the wife by force of the agreement, and that trust attached upon the property, the moment his marital rights gave him the legal title; a trust which, if not avoided by the statute, a Court of Equity would have been bound to enforce, both against the husband and his creditors, unless the possession had been inconsistent with the deed. In a Court of Equity, the rights of all parties were precisely the same, whether the husband or any other was trustee; and the bare legal title in the husband, was no more subject to the claims of his creditors, than any other legal title which he might hold in trust for any stranger.
The Court, in Pierce v. Turner, after coming to the conclusion that unrecorded deeds are void, only as to the creditors of the grantor, add, “That creditors of the hus? band, or purchasers from him, may be injured by the construction which this Court feels itself compelled to give to *244 this law, need not be denied; but it is not for this tribunal to give them relief. It might perhaps be well, if the law were so amended as to render deeds made in contemplati°n of marriage, void, in express terms, as to the creditors of the husband, and purchasers from him, in case the same should not be recorded within the time prescribed by law;” thus admitting that the ease was within the policy of the law, as they had already admitted that the words of the law were broad enough to embrace it. It seems to me, that the necessary conclusion was, that the ease was within the provisions of the statute, unless that conclusion were clearly inconsistent with some other provision or obvious purpose of the statute.
Upon the best consideration that I have been able to give to this question, I think, upon the words and policy of the law, and the construction given to the statutes concerning analogous subjects in England, that the statute of conveyances avoids a marriage settlement, oran agreement made in consideration of marriage, by which the property of either the husband or wife is settled, or agreed to beset» tied, if it be not duly recorded; both as to the creditors of, and purchasers from, the husband and wife, no matter to which the property originally belonged, if any right which the creditors or purchasers would have had, if the deed or agreement had not existed, would be injuriously affected by the deed, if it were held to be valid.
It is not, however, very material to the decision of this case, that the Court should come to this conclusion, since I think, as indeed was admitted by one of the appellant’s counsel, that the paper in question was neither a marriage settlement, or covenant, or agreement, in consideration of marriage. The case therefore turns upon the effect of the statute of frauds; and in considering it in that view, several distinct questions occur.
The first of these is, whether the possession of the property was inconsistent with the terms of the deed; and if so, whether, in the absence of all proof as to any agree- *245 meat between the parties, collateral to the deed and vavying its effect, the deed would be void as to the husband’s creditors. Secondly, whether such proof of such a collateral agreement, is admissible; and if not, whether the deed in that case, appearing on its face to be a conveyance made without a consideration deemed valuable in law, would be good against the creditors of the husband, if duly recorded.
It appears that Mrs. Birdsong, being about to intermarry with Jeffries, who was known to be greatly involved In debt, and on the day of, and before the marriage, executed to her brother Land, then absent in the military service of his country, an absolute and unconditional bill of sale; which was written by Jeffries himself, convoying all her personal property, without any consideration of money or other valuable thing passing from hand, either expressed in the deed or alleged by the parties. No change of possession followed this deed, either immediately upon the execution of the deed, or at any time afterwards; but, the property remained in the possession of Mrs. Birdsong until her marriage, and afterwards, in that, of Jeffries her husband, without interruption, for more than three years, and until it was taken in execution by a creditor of Jeffries; and was during this time used by Jeffries, precisely as if the deed had never been made; he exercising all acts of ownership over it, except that it does not appear that he sold any part of it. This possession and use were with the assent of Land, after he was apprised of the existence of the deed; which was soon after the marriage, and at. least as soon as the 1st of January, 1815; for, the bond of Jeffries exhibited by Land bears date on that day, and though not proved, is evidence against him, to shew that he was then apprised of the existence of the deed; although it may not be admissible evidence to account for the possession and use of the property by Jeffries, so as to take the case out of the operation of the Statute of Frauds and PftriurieR, And if it were admissible for that purpose, it *246 is obviously colourable only. Jeffries was insolvent, and no security was required. The existence of the bond was, as far as appears, kept a profound secret. This is alleged in tbe answer, and not contradicted by the proofs. It was not even witnessed.The payment of it has never been demanded, and no bond was taken after that, although the possession and use continued as before»
Upon these facts, in the absence of all others, it is clear that the possession was inconsistent with the deed; and it cannot be for a moment doubted, that such an absolute deed, the donor retaining the possession and use without interruption for upwards of three years, in an ordinary case, would be void as to creditors of the donor, according to the uniform decisions of the Courts in England and Virginia, and of the Supreme Court of the United States; so that, if Mrs. Birdsong had never been married, the deed in question, under such circumstances, would have been void as to her creditors. And if Jeffries had made such a deed for the property in question, after his marriage, or for his own property, and retained such a possession and use of the property, it would have been void as to his creditors, and purchasers from him.
But, it was said at the bar, first, that a gift without consideration, or a sale by the intended wife, of her property, before marriage, with the assent or knowledge (which is equivalent to assent) of her intended husband, is good against the husband and against his creditors; that a gift or conveyance by the intended wife, with such assent of the intended husband, no matter with what intent or for what purpose made, divests the legal title of the wife, as between the parties (even fraudulent transactions being good between the parties) and prevents the husband’s marital rights from attaching on the property: that creditors claiming under the debtor, cannot claim what the debtor was never entitled to; that, therefore, in such case, the con» veyance does not delay, hinder, or defraud such creditors, as they are not thereby deprived of any right or remedy. *247 which they were ever entitled to as to such property; and consequently, that the Statute of Frauds and Perjuries does not avoid any conveyance made by the intended wife before marriage, as to the creditors of the husband, unless the conveyance be also void as to the husband.
Secondly, it is said, that this ease does not come within the principles of the adjudged cases upon the subject of a continued possession and use of the property by the donor, inconsistent with the terms of the deed, since after the marriages, Jeffries, (and not his wife, the donor) had the possession and use of the property; and
Thirdly, that the circumstances of this case, (without proof of any agreement between the parties, as to the ob - jects of the deed, inconsistent with the terms of the deed) sufficiently explain the possession of Jeffries, and obviate the charge of fraud as to Mrs. Jeffries; since she was dis - abled by her coverture, after the marriage, from completing the transaction by changing the possession of the property; and before the marriage, she could not deliver the property to Land, ho being absent.
It is certainly true, that a sale or voluntary gift of her property to another, by a woman before marriage, if not fraudulent as to her intended husband, is good both as to 3iim and his creditors, and purchasers from him. The husband is not, by the marriage, a purchaser for valuable consideration, of his wife’s property, but only of the marital rights devolving on him by law; and therefore, all her rights fairly tranferred (as to the intended husband,) by her to another, before the marriage, are effectually withdrawn from the operation of his marital rights. He neither acquires any interest in fact, or in contemplation of law, in the property so transferred to another; and his creditors can, in such case, haye no claim against it But, if the wife, conveying her property before marriage, with the assent of her husband, reserves to herself, by express provision, or by a secret trust, any interest in such property, either legal or equitable; such interest devolves, by virtue *248 of his marital rights, on the husband, unless it be reserved in a legal and effectual way, for her separate tf&e, notwithstanding her future coverture; and his creditors can assert their claims against such interest of the husband, notwithstanding any covinous contrivance to defeat their rights; and although the husband or wife may have precluded himself or herself, from asserting such right at law, and may-have depended wholly on the faith of the donee of the property for the due execution of the trust reposed in him. No man can hold property by any title which is not liable to the claims of his creditors. It is not necessary that a creditor shall shew that his debtor has an interest, which he can assert at law or in equity, in order to enable the creditor to subject it to the satisfaction of his demand. In all cases of fraudulent conveyances, the party is bound and can assert no claim, either at law or in equity; and yet his creditors are not bound as he is, and they may assert their rights against the property, as if the conveyance never existed.
In this case, the possession and use being inconsistent with the deed, is conclusive proof that it was not the intent of the parties, that the wife should give away her property to her brother; but, that he should hold the nominal title in trust for her general use; and that right in her devolved by law upon her husband, (he having possession of the property, with the assent of the trustee) and was liable to his creditors. No special trust for the separate use of the wife, any more than for the joint use of the husband and wife, can be inferred from this possession; and without any other evidence of the intent of the transaction, the legal inference is, that the object of the parties was to delay, hinder and disturb the rights of the husband’s creditors. It is upon these grounds, that the rule has been established, that a possession and use inconsistent with the terms and professed objects of the deed, makes the deed per se fraudulent and void; since it proves conclusively, notwithstanding any colourable conveyance, that the beneficial *249 right io the property is in the person who has such use and possession; and, therefore, such use and possession is eon-elusive evidence of an original fraudulent intent in the making of the deed, and avoids it ab initio; so as that it cannot be considered as having any effect, from the beginning.
As to the suggestion, that the fact of the possession and use, as it was in this case, does not bring this case within the principles of the adjudications on this subject, because it was not a continued possession by the donor, but after the marriage, the possession passed to, and continued in, the husband; it is sufficient to observe, that the suggestion would have bad more force, if the property, after the marriage, had continued under the exclusive control of the do - nor; for then, in fact, the possession might be said to bo affected by the deed, and not to go as if the deed had no existence; and a trust might possibly be inferred from that fact, for the sole and separate use of the wife; and the deed might be supposed to have been intended to have affected, in some way, the real and beneficial title to the property. But, the possession of the husband was the natural consequence of a merely colourable conveyance, not intended to change the real and beneficial title to the property, and ought to have the same effect, as if the donor had never married, and had sold or given the property to some other, after making the deed, and that other had continued in the uninterrupted possession and use of the property; which would, if possible, afford more decisive evidence of the secret trust for the general use of the grantor, connected with the first deed, than if she herself had continued in possession.
As to the third suggestion from the bar above mentioned, it may be observed, that in the aspect of the case now under consideration, it can have no effect. Mrs. Jeffries professed to give her property hv the deed in question, absolutely and unconditionally, to her brother. It is he who asserts a title under this deed of gift; and if it was *250 really intended that the deed should give him any benefieial interest, the incapacity of the donor, after marriage, to deliver the possession to him, without her husband’s consent, was no impediment to his demanding possession from the husband, and compelling the surrender of the property. It is from his failure to assert any right to the property, and his acquiescence in Jeffries’ possession and use of the property, that the inference of law arises, that he never was intended to have, and had not, any interest in the property. The omission to deliver the property is urged, not against the rights of the grantor, but against the pretended rights of her pretended donee. Although the continuance of the possession in the donor, and her husband coming into possession under her by operation of law, whilst Land was absent and incapable of receiving the possession, (and perhaps ignorant of the existence of the conveyance,) might not be considered as a possession inconsistent with the deed, if he had claimed the possession as soon as these impediments were removed; yet, his long subsequent acquiescence in such possession, after he was informed of the existence of the deed, and might have asserted any right which he had, relates to the origin of the transaction, and demonstrates its real original character.
In this view of the case, I therefore conclude, that the possession and the use of the property by the donor and her husband, in her right, in a way totally inconsistent with the terms and legal import of the deed, is conclusive evidence that the deed was made for the sole purpose of securing to the donor and her intended husband, such possession and use, by vesting a title in the donee for the use of the donor generally; or was only colorable, and notintended to affect the title at all, except so far as to protect the property for the use of Jeffries, against the claims of his creditors; and in either case, the property is liable to the payment of Jeffries’ debts.
But, if it be competent to the appellants to allege and prove an agreement and objects contrary to the legal im *251 part of the deed, so as to shew that such possession and use, although inconsistent with the terms of the deed, was not inconsistent with the objects of the deed and the agreement of the parties, not expressed in the deed, but collateral to it, then if such averments and proofs are found in the record, the appellant should prevail, unless the transaction, would be void, otherwise than by virtue of the second section of the Statute of Frauds and Perjuries. But, was it competent to the parties to make such averments, and give such proofs ? The common law prohibits any averments or proofs inconsistent with the deed, or with the written agreement of the parties, so as to vary their legal effect, unless in cases of fraud or mistake. If it were otherwise, the solemnity of a deed, or the precaution of reducing agreements to writing, would avail but. little; and the spirit of the Statute of Frauds strongly enforces this principle of the common law. If the parties were permitted to give parol proof of an agreement, in relation to the possession of property absolutely conveyed, inconsistent with the legal effect of the deed, the rule of law, which declares that such possession makes the deed per se fraudulent and void, would have no effect. In all such eases, such possession might, and probably would, be accounted for by parol proofs. If such parol proofs were admissible, then proof of a loan would sufficiently explain away the apparent inconsistency of the possession. And if such evidence was admissible, it would be absurd to say, that such inconsistent possession per se made the deed fraudulent and void in point of law; for, all the evidence ought, in that case, to be left to the consideration of the jury, to have such effect as it ought to have. This point is well established by the uniform current of authorities. Thus, in Edwards v. Harden, 2 Term Rep. 587, the grantee took an absolute deed; but, it was agreed between him and the grantor, that it should only operate as a security for a debt: that the grantor should retain the possession for fourteen days, and if the debt was not then paid, the grantee should take *252 possession of the goods and sell them for the payment of the debt. If this were admissible evidence, then the possession of the grantor was fairly accounted for; since it was consistent with the proved agreement of the parties, though inconsistent with the terms of the deed. Yet it was held, that this possession inconsistent with the deed, per se rendered the deed fraudulent; and the evidence offered to ex« plain this possession by proof of a collateral agreement as to the possession, was disregarded.
So in Alexander v. Deneale, 2 Munf. 341, the deed was absolute on its face, but proved to be for securing debts due from the grantor to the grantees; and so the possession, although inconsistent with the deed, was consistent with the proved agreement. But, the Court disregarded this proof, and declared the deed to be fraudulent per se. And in Williamson v. Farley, Gilm. Rep. 15, the grantee was a purchaser for full and valuable consideration, and at the time of the purchase took an absolute bill of sale, and then hired the slaves to the grantor for one year for their food and clothing, and took a bond for their return at the end of the year; such possession, consistent as it was with the collateral parol agreement, was notwithstanding declared to render the deed fraudulent and void, because inconsistent with the deed. Many other cases might be cited to the same effect, in this Court and elsewhere.
But, although parol proofs cannot be given, for the purpose of explaining a possession inconsistent with the deed, by shewing an agreement of the parties collateral to the deed, yet such proofs may be given, to shew that there is really no inconsistency between the possession and the deed itself. As, if the deed be conditional on its' face, proofs may be given as to the performance or non-performance of the condition; or, if upon the face of the deed, the property is to be disposed of by the grantor for the benefit of the grantee; or, if the grantor retains the possession, not for his own use, and does not use it, but only for *253 .:afe-keeping until the grantee can take possession, as if the grantee be at a distance; or, the deed is to trustees for the purpose of selling and paying debts, and the property remains, for safe-keeping, in possession of the debtor, (as is usual in such cases,) until a sale can be conveniently made; or, if the property be in such a situation as that it cannot be delivered, (as at sea,) so that it be delivered as soon as practicable; or, if the grantee purchase at a Sheriff’s sale, and leave the property in the possession of the debtor, and for his use, this possession is not inconsistent with the idea of a dona fide absolute and effectual conveyance from the Sheriff to the purchaser; or, if the possession be a social possession, so that a possession of the grantee may be implied; such cases do not, in fact, come within the rule under discussion, since' no proofs are given to contradict or vary the terms or effect of the deed, but only to shew that the possession is not in fact inconsistent with the terms of the deed itself; and of this character are all the cases cited at the bar, as forming exceptions to the rule.
There is no ingredient of fraud or mistake in this case, to exempt it from the operation of the general rule, and to justify the admission of the parol proofs, as to the real objects of the deed. No such fraud or mistake is alleged in the pleadings; and if it were, none is proved. The deed is drawn in the very terms intended by the party who drew it; and he verily believed it would have the effect intended, whatever that might be. His mistake, or the mistake of any of the parties, as to the legal effect of their deliberate and intended acts, is not such a mistake as any Court can take notice of. 1 Madd. Chan. 41; Hodges v. Hodges, 2 Vern. 615.
The next question is, whether the recording of the deed (supposing it to be duly recorded) will render it valid; although it might be void if not recorded. This question arises under that clause of the statute which declares, “and moreover, if a conveyance be of goods and chattels, and be not on consideration déemed valuable in law, it. shall be *254 taken to be fraudulent within this act, unless recorded, or unless possession shall really and bona fide remain with the donee.” It might be argued, that in such cases, the statute intended to substitute the recording of the deed for the possession of the property by the donee. But this clause, which is not in the English Statute, was obviously introduced for the purpose of enlarging, and not of abridging the former parts of the statute; not for the purpose of making good what would otherwise be void, under the former part of the statute, but for the purpose of avoiding (if the deed be not recorded, nor accompanied with possession,) such voluntary deeds as would be good under the former part of the statute; as, the case of a person, not at all indebted at the time, making a gift by deed, as has been repeatedly held in cases lately decided in this Court. In the case of Chamberlayne v. Temple, 2 Rand. 384, a deed of gift was made by a father to his infant daughter, when it did not appear that he was at all indebted; which would have been good against the father’s creditors; but, for this clause of the statute, was held to be void as to his creditors, for not being duly recorded; whilst other deeds of gift, made to his other children when he was greatly in debt, and which were duly recorded, were held to be void under the former part of the statute. If the creditors of the husband could in no case impeach the voluntary deed of the wife, then it is immaterial whether her deed was recorded or not; and if they can impeach it for fraud under the statute, this is a ease of fraud under the former part of the statute, and in that case, it is immaterial whether the deed was recorded or not. I have, therefore, not considered the question, whether the deed was or was not duly recorded. If it were material, I should incline to the opinion that it was not. If Land had taken possession of the slaves, and Jeffries had sued him for them, I doubt whether the deed recorded upon the wife’s acknowledgment after the coverture, could be given in evidence against the husband, without further proof of its execution.
*255 Supposing, however, that notwithstanding the presumpdon of law already discussed, when the possession and use of property are not, in consequence of a conveyance, in any degree changed or affected, so far as creditors and purchasers were concerned, it were yet competent to the parties to repel this presumption of law by parol proofs of a collateral agreement, in relation to the effect and objects'of the deed, inconsistent with its terms; then it becomes necessary to examine the proofs in this case, in relation to the alleged agreement.
The allegations of the bill, and of Jeffries’ answer, cannot be regarded further than as they are supported by proofs. All the proofs in relation to the declarations of Mrs. Birdsong in the absence of Jeffries, as to her determination not to marry Jeffries unless her property was secured to her against the claims of his creditors, and as to his declarations as stated by her, that he would not sign a marriage agreement, but that she might do as she pleased with her property, and that it should be secured to her, are inadmissible evidence, and to be thrown out of the ease.
This will leave, upon this point, the testimony of one witness only to be considered. All the rest speak only of Mrs.. Birdsong’s declarations made in the absence of Jeffries; and Louisa N. Lane alone speaks of any communication between Mrs. Birdsong and Jeffries on this subject. She states that Mrs. Jeffries, before the marriage, signed a paper, the contents of which, she, (the witness.) knew not: that before she signed the paper, Mrs. Jeffries asked Jeffries, 44 if that was sufficient to secure her property to her,” and he replied, 44 Yes; her property could not be taken to pay his debts.” Of the numerous witnesses examined in the cause, and who were present at this transaction, and amongst others the subscribing witness to the deed, not one testifies to this conversation, except Louisa N. Lane, or to any other communication between the parlies, as to the objects and purposes of the deed. The declaration of Jeffries stated by Louisa M Lane, does *256 indeed shew, that the object of making the deed, was-to preserve the property against the claims of his creditors, but not against himself, or to her separate use; and is not at all inconsistent with the presumption of law arising from the continued possession, that he was to have the beneficial use of the property, as if the deed had not been made; and it is precisely this intent, to give or leave to him the beneficial right to the property, and to secure it at the same time from the claims of his creditors, which the law condemns as fraudulent as to them. But, if this evidence can be supposed to have any other effect, and to shew that it was intended that Mrs. Jeffries shoulcj have the separate use of the property, ought the strong and well-founded jealousies of the law against the allowance of parol proofs to add to, or vary, or contradict, the legal import of deeds and other instruments of writing, or to control the effect, of a possession inconsistent with the deed, to yield to evidence so slight and uncertain as this ? And ought not such evidence to be clear and conclusive, beyond any doubt? This person was not called upon to witness any transaction or agreement between the parties. She was not even apprised of the purport or objects of the instrument of writing about to be executed. She casually heard a single question and answer, which she testifies to many years after; and this testimony is to overrule the effect of the deed, and continued possession of Jeffries, although the slightest mistake of the witness in her recollection of the precise terms of the question and answer, might essentially vary the rights of all parties, whose interests were liable to be affected by the execution of the deed. If the question had been, “will this secure my property against your creditors,” (as I think it probably was, from the terms of Jeffries' answer,) the evidence then would have no effect whatever. I do not think this evidence ought to be considered, even if admissible for that purpose, as sufficient to vary the legal import of the deed, and effect of the possession.
*257 If the appellants could succeed in this ease, it would produce infinite frauds upon the creditors of husbands apparently in possession of the property of their wives, by virtue of their marital rights, and upon purchasers of such property from the husbands. In all cases, secret conveyances made by the wife before marriage, and concealed with Intent to he used or not, as the future circumstances of the husband might make it expedient, and purposely to defraud creditors and purchasers from the husband, might deprive creditors, (who trusted on the faith of the apparent title, and the possession of the husband by virtue of hip marital rights,) of their remedies against the property, and purchasers dealing with the husband in the same confidence, of their title to the property so purchased. For, if such creditors and purchasers have no right to impeach such conveyance on the ground of fraud, in any ease, it is wholly unnecessary to record the deed as to them, either unde* the statute of frauds, or statute of conveyances.
Judge Ooaj.ter.
I shall consider this caso, first and principally, as arising upon an absolute deed made by the female appellant to her brother, on the eve of her marriage, and in contemplation thereof, unaccompanied by any expectation on her part or agreement on his, to hold the property conveyed for her use, but made solely with a view to intercept the marital rights of her intended husband, and the rights of his creditors; and shall throw out of the case the alleged hiring of the slaves by the grantee to the husband, after marriage.
Secondly, I will enquire whether, if the case would be with the appellants under that view of it, it is against them on the ground, that at or before the execution of the deed, there was an expectation or understanding that the property would be hold in trust for her, and which has since been agreed to and admitted by the grantee, because such understanding or agreement was not stated in the deed.
*258 If the slaves bad been the property of the husband, and had been so conveyed, although there had been a parol trust agreed upon in favor of the wife, and in considera» i^011 °f the marriage, it would have been void as to his creditors. Alexander v. Deneale, 2 Munf. 341; 2 Vern. 490. But the property belonging to the wife, and the intended husband being in debt, and not worth a cent, as is admitted in the answer, it was perfectly honest and correct that her property should be protected from his creditors, provided the husband assented thereto, and was willing to marry her on those terms; even if she preferred to make a voluntary gift of it to her brother, rather than that they should go to pay his debts. Suppose she had made a gift of them by parol, or a sale for @10, which, as to her creditors, would have been considered a voluntary gift, and had delivered the possession to him; this wo.uld have vested the legal title in him; and if so, he could have disposed of them as he pleased. Having the legal title thus in him, suppose that a few days after the marriage, he had hired or lent them to the husband, and they had thus remained in possession; would this be considered her possession, so as to defeat the absolute gift or sale ? If it would as to her creditors, (as such voluntary gift or pretended sale would be void, even without such possession,) would it as to his creditors ? It appears to me that it would not, and that this may be considered as settled by this Court in Pryor v. Kinney's ex'ors. 6 Munf. 510. In that case, if Mrs. Pryor had been in debt, and judgment had been, recovered against husband and wife, and his estate had been insufficient to pay the debt, 1 presume a sale of the slaves would have been decreed to pay her debt, though the creditors of the husband could not, in that case, subject them to theirs. If the title passed, without a fraud on the marriage, the marital rights of the husband were intercepted, and he did not become a purchaser of the property by the marriage. I consider this question also settled, by the decision of the Supreme Court of the U. States in the case of Pierce v. Turner, 5 Cranch, 154.
*259 In the ease of Crump v. Dudley, 3 Call, 507, the wife, an the eve of marriage, made a bill of sale for a small con•¡deration, of her reversionary right to a slave. This was attempted to be set aside by the husband as a fraud on his marital rights, but he failed; and I presume his creditors would also have failed.
Marriage, it is true, is to the world prima facie a pur chase by the husband of the wife’s personal property; but. It is not always a purchase. She may sell it before roar riage, or it may be settled upon her. If it be sold, given away, or settled, it is his, although he does not get immediate possession of it, and his creditors can resort to it. Possession or want of possession is, therefore, not a certain indicium of property or title. A man marries the daughter of a wealthy father, and brings home with her slaves, &c. Prima facie they are his; but, they may be only on loan. His creditors derive title through him, and unless possession remains five years, are only entitled where he is entitled.
But, this was not a parol gift, or sale accompanied with ihe immediate transfer of possession, but was a bill of sale to a brother, not then present. Did that bill of sale vest the title in the brother, as it regarded the grantor and her future husband ?
I have always supposed that a title to personal property may he transferred by deed, without actual delivery of the property at the lime to the grantee, who, whether present or absent when the deed is made, is invested with the title. Fowler v. Lee, 4 Munf. 373; Edwards v. Harben, &c. 2 Term Rep. 587. Thus, deeds of trust, where the grantee never saw the property, or even knew of the execution of the deed, and where the possession remains in fact with the grantor, passes the legal title to the trustee. So a bill of sale of property at sea, &c. It is true, that as to third, persons, creditors or subsequent purchasers, the deed, under circumstances, is avoided by statute; but this shews that a statute was necessary, in order to avoid them as to such *260 parties, who might otherwise be defrauded. If, as to the grantor and the intended husband, the title passed to the grantee, though he was not present, and did not then receive possession, and must stand good-as to them, was it fraudulent as to the creditors of the husband, at the instant of the execution of the deed ? And if not, do the after events make it so ? It was not fraudulent when executed, but she had a right, as it regarded his creditors, to give her property to whom she pleased, if done in a way not fraudulent as to the intended husband.
Suppose the sheriff, with the execution in his pocket, had been present at the marriage, and had, immediately after its solemnization, levied it on this property; would it have been liable to this execution as the property of the husband ? I think not. If his marital rights did not then attach, they riever did. His rights by possession after-wards, are of a distinct nature from his marital l'ights.
Do the after circumstances avoid it ? It was executed on the day of the marriage, and a few minutes before its celebration; was known to, approved of, and actually written by the intended husband, a lawyer, and in consequence of repeated declarations by her, that his marital rights were not to attach on her property. Possession could not be delivered instanter to the grantee, who was not present. The possession, then, which remained with her for those few minutes, would not, I apprehend, make that deed fraudulent per se, even as to her creditors, if it would not have been void as to them, for want of consideration. After the marriage, the possession was no longer hers, nor had she any power to control it. Suppose she had proposed to send the property to her brother’s plantation, there to remain until his return; the husband could have prevented this. The possession then was his, and no longer remained in the grantor. Suppose the husband had so sent them, and on the next day, the brother having come home, had brought them back, and lent or hired them to the husband, and they had remained, as they did, in his possession? *261 would this have barred the rights of the creditors? I presume that under such circumstances, they could not have claimed, unless possession had remained for five years. But, if they had been the property of the husband, and had been parted from by an absolute bill of sale, for full value even, such slight change of possession would not have barred his creditors. The transaction would have been considered fraudulent as to them. This shews that a sale or gift by the wife, in contemplation of marriage, is a very different thing from a like transaction by a debtor in relation to his own property.
A voluntary gift by the wife, dum sola, accompanied with a transfer of possession, and consent of the future husband, provided neither husband nor wife were ever after-wards in possession, would certainly be good as to the creditors of the husband, though not as to those of the wife. It would be bad as to the latter, for want of consideration. This shews that parting with the title in any way, by the parties to the intended marriage, is not, at the time such title is parted from, fraudulent as to the then creditors of the-husband; nor will it so become afterwards, unless some statute makes it so. The deed then was fair, legal and proper, at the moment of its execution. It was a moral duty, as well in her as in him, to protect this property from his creditors, who had no right to oppose it, for the future support of their family, and was a transaction which the Courts will approve and support; and is much more fair, than for a man in debt to settle his property, so as to make his wife and children purchasers by the marriage, and thus to defeat his creditors; yet this is lawful. The few moments possession by her, from the time of the execution of the deed to the celebration of the marriage, would not avoid it, as to him, so as to make him a subsequent purchaser by the marriage. He knew that the title had passed from her, and that too as a precedent condition to the marriage. After that, the possession was no longer hers but his, until claimed by the true owner, who could assort his right at, any time *262 within the five years. The doctrine, then, now under eon“deration, and which avoids the deed within the five years, because of the grantor remaining in possession, seems to me not to apply; first, because the grantor was not the debtor, and secondly, because possession did not remain with her. Had the witness to the deed, or any other person but the husband or grantee, taken or retained possession, the creditors could not claim; and yet, if it was the husband’s property, or if his marital rights had attached upon it, they could, notwithstanding such possession in a stranger.
If it be said that, as to the world, the husband had the same kind of possession that he would have had if his marital rights had attached, and that so far they might be deceived, and that it will open a door to perjuries, if we justify the setting up claims inconsistent with such possession; I answer, that in every case where a man acquires possession of personal property, that possession is', to a certain extent, and according to circumstances, prima facie evidence of right. Thus when a man, not in debt, marries the daughter of a wealthy father, and brings home with her personal property, it will generally be supposed to be his. Yet it may, in reality, be a loan; and if not, and he becomes embarrassed, a loan may afterwards be set up by perjury. But, the Court and jury are to judge of this; for surely, a loan in such case as this, may be proved, and may within five years be declared by deed. But, if the husband was in debt and not worth a cent, as in this case, a loan or some settlement would generally be presumed; and if declared by deed at the time, known to and proved by a number of witnesses, though not recorded, it would stand good for five years, and the property could not be taken within that time, to pay the husband’s debts. It may be, that the possession by the husband of the property which belonged to the wife before marriage, is stronger evidence to the world that he became the purchaser of that property by the marriage, than in the case *263 just put. But yet, every body knows that his marital rights may have been intercepted; and if this is proved without a shadow of doubt, or appearance of fraud or perjury, as in this case; and as there is no act of tho ture which prevents a woman from fairly parting with her property before marriage, I cannot see how we are to avoid the conveyance made by her, in this ease.
As to the second point. I do not consider this deed as a marriage settlement. In fact, he had nothing to settle; and she could settle her property, by his consent, as she pleased. No marriage settlement here deprived his creditors of any thing; as it might have done, if he had had property to settle. It was, therefore, not necessary to record it. It is said indeed, that the intended husband refused to give it that shape; and although this is only proved as her declarations, that he so refused, yet this is a part of the res gesta, and his drawing the instrument in the form he did, he being a lawyer, shews that what she said was true. The form, then, of an absolute deed, (she depending on the justice and liberality of her brother,) was adopted, as one which, it was believed, would, and I think did, answer the purpose intended. Had he been present, and possession delivered to and retained by him, even until the celebration of the marriage, there would have been no doubt, I presume, with any one, that the title passed, and that he could the next day, have settled the property in trustees, or could have declared himself possessed for her separate use, and have given possession to the husband. If he could do so the next day, he could have done so at any time within, five years, notwithstanding the possession of the husband in the mean time. He agrees in the bill, that he is trustee for this purpose. Such agreement surely will not destroy his title under the deed.
But take it, that there1 was no trust to her separate use declared or agreed on, at the time the deed was executed. It was certainly intended that his marital rights, and of course the rights of his creditors, should notjttaeh. This *264 could be prevented either by an absolute gift to her brother, or by a deed of trust to her separate use. An absolute bill of sale executed, let it be admitted, under a belief or hope that he would hold for her use, in such a way, as to prevent the creditors from talcing the property, was resorted to. How can such expectation or belief prevent the legal title from vesting in the brother, or prevent his agreeing afterwards to hold it in trust to her separate use ? Had he, by deed, declared a general trust, so as to give the creditors a claim, they could only have claimed through that deed made by him, as the absolute owner, not on the original marital rights of the husband.
But suppose he {Land) had been in debt, and the dispute had been between his creditors and those of the husband; the latter could only prevail on the ground of this belief and expectation in the wife, that the property would be held in trust; and that Land therefore held the property clothed with this trust, which would cut out his creditors. But, if they resort to that, it would turn out that it was to be held in trust, in such way as to defeat them; that is, in trust for her separate use; and then the question would recur as to Land’s creditors, whether such expected trust, not declared in the deed, would defeat the legal title as it regarded their debts. Suppose Land, so in debt, or after-wards contracting debts, had taken possession and hired out the slaves to others than Jeffries, and had applied the hires to the maintenance of his sister, no trust being declared either in the deed in question, or in any deed made by him. His creditors, I apprehend, could have taken the property, he having the legal title, unaccompanied by any trust affecting them; and that they would stand on different grounds from the creditors of Jeffries. Would his hiring or lending to Jeffries differ the case from what it would be, if the hiring or .lending had been to any one else? I think not.
If Land then had the legal title, he could declare a trust afterwards, or a loan, and although this might not affect *265 his creditors prior to such declaration, and subsequent ereditors might also come in, if there were prior ones; and if there were no creditors, such declaration, if not for the separalo use, might give Jeffries an interest which would enure to his creditors; yet they would claim under his marital rights then attaching under this declaration of a trust, and not before. But the trust is declared now in this bill, and it is declared for her separate use. The possession, in the mean time, has been in Jeffries, either on hire or loan, (I care not which,) and for a less time than five years; within, which time the. owner can declare a trust or loan. Suppose, before this execution had issued, Land had executed a deed referring to the one now in question, then remaining in the Clerk’s office, and had conveyed the property to a trustee, to bo held for her separate use, or had declared himself, as in this bill, to be such trustee, and that deed had been duly recorded; could any but his creditors have complained of such deed ? I think not. An absolute bill of sale, by one in debt, of his goods, of which he after-wards retains the possession, is deemed fraudulent as to his creditors, because a secret trust in his favor is presumed, even if the grantee is also a bona fide creditor to the full value of the goods. J2 fortiori, if the deed, on the face of it, is voluntary and for the sole use of the debtor, will if; he void as to his creditors. But in this case, such trust for the sole use of the grantor, and to exclude the marital rights of the husband and his creditors, would have been just and meritorious. So, an absolute deed, withotit consideration, would have been good against his creditors. But, here is an absolute deed, accompanied with possession in the husband after the marriage; and therefore, as it has beeu decided that such a transaction by a man in debt, is void for the supposed secret trust, it ought to be equally so here. But, there is one manifest distinction between the two cases. There it would not do that this secret trust should appear on the face of the deed; it must be secret, ond of course, fraudulent. Here, no secrecy was neeep *266 sary, no inducement to secrecy. Property settled to the sole use of the wife, (she to be permitted to use and enjoy it) is more for the benefit of the husband, who is in debt to insolvency, than either a secret trust, or one declared on the face of the deed for her use generally. There is, there-' fore, no motive for secrecy or fraud. But, we must presume there was a secret trust, and that this secret trust was in fact for the husband. I see no necessity for this strained application of the rule, as applicable to a debtor parting with his own property. Why are we to presume a trust at all, if none was declared at the time? Why not take it as an absolute gift, and the possession to be such as the brother might have permitted of other property of his; or at most, as a hope that he would agree to hold for her use, which he had a right not to disappoint But, if we must presume a trust of some kind, are we bound to presume it a trust for the husband and his creditors? Could he, in a suit for that purpose, insist upon it as a secret trust for him ? What head of equity have the creditors to stand on, that he has not ? I cannot perceive any. What principle of equity or public policy compels us to infer a trust for him and his creditors, contrary to every declaration and manifest intention, both by him and her, that his marital rights were to be intercepted ? I confess I can see none. On the contrary, it has been decided by this Court, where a woman, about to marry a man much involved in debt, settles her own property with his consent, in trust that the husband and wife should enjoy the interest and profits of the said estate jointly during their lives, gives no claim to his creditors, as it would defeat the avowed object of the settlement. Scott, &c. v. Gibbon, 5 Munf. 86.
If we are bound to infer a secret trust of some kind, shall we infer one which in fact destroys the deed in toto$ for, if it was generally for the wife, without any remainder over for children, then the husband would take as absolutely as if no such deed had been made. Yet the deed was good when executed; and had the possession passed to, and re- *267 ¡■Minot! with, the brother, would have given him full right to declare what trust he pleased.
ilul the creditors claim, not on the rights of Jeffries ac~ quired by the marriage; they were gone, and continued out of him, at least for so long a time as to pul it in the power of Land to assert his rights under the deed, and get possession. After this, the possession remaining in Jeffries, it is said, affects the deed itself, and the undoubted title which hand would have held, but for this possession, so as to avoid it, and places Jeffries and this property, not as between him and his wife, but as to his creditors, iu the same situation as if the deed had not been made. True, the possession of Jeffries may so enure to his creditors, though he might not he able to retain the property to himself. But, under what law will it so enure? Not under the terms or policy of the first section of the Statute of Frauds, as I think I have before shewn; but under that where a possession of more than five years, without trust or loan declared, &c. recorded, will give such right. I consider that this was the decision In Pryor v. Stribhling. The conveyance in that case intercepted the marital rights. Pryor had been in the general possession of property more than five years before the suit That was a deed absolute on the face of it, and did not express the real consideration on which it was said to have been made. The possession began, probably as soon as a husband’s possession could begin, that is, at the end of the year; they being in the possession of andrew Lewis at the time of the marriage, and continued in his (Pryor’s) possession, oven for more than five years. This possession was adverso to the terms of the deed, and had it been uninterrupted for the five years, there would have been no doubt as to the rights of the creditors; but, that had not been the case; and Beaseley v. Owen, 3 Hen. & Munf. 455, was relied upon on that point This case may not be law, but I am humbly of opinion that it is; as also the case of Pierce v. Turner; and if they are, 1 think they support my position through» *268 out. In this latter case, the deed was not considered a marriage settlement, though signed by the husband to shew his assent thereto. It was,” like this, the case of a woman about to be married, securing her own property to herself with the assent of her intended husband; and consequently, did not fall within the meaning of the statute concerning conveyances, and did not require to be recorded. Creditors there had not that legal notice of it, which the statute intended; and the trustees let Turner into possession, who died in possession within the five years. This was relied on in the case. But, there was a trust declared in the deed, and the possession was not contrary to that. But what had creditors, ignorant of it, to do with that ? Here the husband was in possession of the wife’s property; and when the creditor trusts him, and sues his execution, he is met with a deed. But, it has a trust in it, and so all is fair and right. Yes, all was fair and right, thus to secure her own property, and that in a way to let her husband into possession, and not to record the deed, but to have her rights asserted and made known at any time within five years.
It was contended, that though such possession might remain, and the deed would be good for eight months, yet not being recorded, it was void ab initio as to creditors. But it was decided, that the marital rights were intercepted by the deed, and that it was not void, so as to let in those rights. If this case does not go the whole way required for the one under consideration, it is only because in the one case the deed contains a declaration of trust, and in the other it is-absolute. It establishes every point contended for, except what may grow out of that difference in the cases; and I cannot perceive, for the reasons aforesaid, why that difference in the case ought to vary the decision.
Judge Cabell delivered his opinion, that the decree should be reversed; but, as it is not now in possession of the Reporter, it will be given in the Appendix if it can be procured.
*269 The President.
i concur entirely with Judge Cake in his statement of the facts in this case. In the argument of it, many questions have been raised; but, I shall confine myself to the consideration of it in two aspects only; first, as regards the rights of the parties to the property in question before, and secondly, after the marriage.
In the first aspect of the case, none of the parties had any ground of complaint At the time the deed in question was executed, the creditors of the husband had not the slightest interest in the property; nor had they any interest in his assent to the deed, as his knowledge of it was quite enough to intercept his marital rights to the property. The interest of the intended wife in the deed was very palpable. She knew that her intended husband was insolvent. She had been advised to take care of her property; and her object was, to secure it both against him and Ins creditors. He had refused to enter into a marriage contract for that object, from the apprehension, probably, of some imputation on his integrity; though he had declared his willingness that she should dispose of it in any manner she chose. It is obvious, that the object of all parties was a fair one, and the deed was intended to effect if; and it only; and whether it has done so, is the first question. Though the word “gift” is inserted in it, I think the force of the terms “bargain and sell,” &,o. make it an absolute bill of sale on the face of it, and in the controversy between the parties to it, would have the effect to pass the title in the property to Land, the intended trustee; and in an action at law, the bargainor would have been estopped to deny consideration, by her seal, though none is expressed in the deed; and though, also, in a Court of Equity, she might have insisted on the intended trust for her sole use. Or, had the marriage never taken place, in contemplation of which the deed was executed, she might have insisted on a re-conveyance of the property by the *270 Intended trustee. As regarded the husband, the property being solely the wife’s, he had not a scintilla of interest in it; and his knowledge of the deed intercepted his marital rights, as before remarked. That a Court of Equity, upon the facts in this case, would have compelled Land, the intended trustee, to hold the property to the sole use of the wife, as against both himself and Jeffries, I can have no doubt. The mistake or ignorance in drawing the deed, would, though absolute on its face, have warranted its jurisdiction; nor would it impair the rule, that contracts under seal are not to be changed by parol evidence. Matters collateral to the deed may always be proved by parol evidence. Ross v. Norvell, 1 Wash. 14, and the cases there cited. Nor, in this first aspect of the case, could the husband insist, that the few hours possession of the property, after the deed was executed, and before the marriage, was inconsistent with the deed. Until that moment, and for some time after, it was impossible to deliver the property to the bargainee; as it appears by the evidence, that he was at too remote a distance to receive it. Before the marriage, he liad no interest in it; and immediately after, he, and not the wife, had the sole control of the possession. She was no longer sui juris. I admit that if the intended trustee had permitted him to exercise rights of ownership over it, and she had failed to assert her claim to it in due time, there might be some ground for the imputation of fraud. But nothing of this appears in this case; and in any case, it ought very clearly to appear, to divest a wife of her rights; who, though as regards the property settled to her sole use, is to be considered as a single woman to all intents and purposes, cannot be so considered in a controversy with her husband, or those claiming under him, to impute laches to her. j There is nothing in the Statute of Frauds affecting this question of possession. It depends on a rule of law which is laid down by Lord Mansfield, in the case of Cadogan v. Kennett, Cowp. Rep. 432, with great precisión, and in several subsequent cases. He says, “ if *271 there is a sale of goods, and the yonder remain in possession and appear the owner, it is evidence of fraud, he-cause goods pass by delivery only. Such a possession and ownership, unexplained by evidence of circumstances accounting for it, makes the deed fraudulent per se,” upon the general principle that prima facie evidence unoontradicted, becomes conclusive of the fact which it is intended to prove. The case of Edwards v. TIarben, and the cases in this Court, go no further. It would be wasting’ time to produce cases shewing that such explanation may be given, when it is confined to unavoidable circumstances, in exclusion of any agreement or assent of the parties, inconsistent with the deed
In the second aspect of the case, as regards the rights of the creditors of the husband, who are supposed to be moro favoured, if the transaction was bona fide at the time the deed was executed, and all objection is removed to the short possession of the wife after that period and before the marriage, there is neither any thing in the Statute of Frauds, nor in the rule, of law, to avail them. If indeed there was any contrivance between the parties, to give to the husband the effectual ownership of the property, and at the same time to defeat the claims of the creditors, the transaction would Ire justly considerad as fraudulent. But, there is certainly no evidence of such a design iu this case. The error in the argument on this point was, in treating ihe marital rights as in existence at the time the deed was executed. They potentially existed, it is true? but not ir the will of the husband only. It depended on the will of the intended wife; ihe more especially as the property was hers, and nothing of the husband’s property was to be affected by the deed. His creditors, therefore, if the transaction was bona fide as to all the parties to it, have nothing to complain of; although in the event that the marriage had taken place without the deed, they would have been entitled to the property. Claiming through the rights of tho hnsbaud as they iniuji; do, against a fair and bona fide cou *272 tract, they cannot stand on better ground than he does. As title to the property passed out of the wife while sole, to the intended trustee Land, the marital rights did not attach upon it, and the pretensions of the creditors of Jeffries are no better than his. Nor will a Court of Equity be very willing to favor them in such case. In the case of Haslington v. Gill, 3 Term Rep. 620, note, which has been cited, Lord Mansfield said, that Courts of Equity, for ages past, have thought the rules of the common law too hard, and have thought it right to protect the property of the wife against the extravagance of the husband, in cases clear of fraud. This is done, he said, by the intervention of trustees; and thus far the wife is to all intents and purposes a single woman, and wherever the trust can be supported in a Court of Equity, it will consider the trustee entitled to the legal estate. In the case of Cadogan v. Kennetl, he also said that the Statute of Frauds in such case ought not to be construed to make innocent parties sufferers.
Considering the deed in this case as an ordinary bill of sale on the face of it, it is not necessary to enquire whether it was duly recorded. There is no statute requiring such a deed to be recorded. If recorded, it would have given no notice of the trust intended. Nor, if it is to be considered as a deed of gift, was it material to record it in this case. In that character, it would have passed the title to the property, with the knowledge of the intended husband, to the donee; and being executed with good faith, could not be complained of by him, or his creditors claiming through him. It was not a marriage contract, but a bona fide transfer of the property of the wife, with the knowledge of her intended husband. A construction which would let in his creditors in such case, would be in restraint of marriage, which would not be countenanced by the Court. It would be a fraud on the wife to defeat an object fair in its circumstances at the time, and in the attainment of which, there was no will to conflict with her own. *273 I admit that if an ex post facto character could be given to such a transaction, fraud might he imputed to it. But, there is certainly no ground for such imputation in the present case.
This view of the case renders it unnecessary to discuss the merits of the decision of the Supreme Court of the United States, in the case of Pierce v. Turner, of which 1 entirely approve. Taking the legal title to the property to he in Land, the intended trustee, he might have been left to his remedy at law against the defendant Steward, but for the nature of the property in question, which, upon the principles of the Court in such cases, cannot be compensated for in damages.
On the whole, my opinion is, that the decree of the Chancellor be reversed, and the injunction perpetuated.
Decree reversed.